### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLENN A. KORNEGAY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:22-CV-124-RDP** |
| | } | |
| **BERETTA USA CORP.,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

This case is before the court on Defendant Beretta U.S.A. Corporation's Motion to Dismiss. (Doc. # 20). The Motion has been fully briefed (Docs. # 20, 22, 23, 25, 27). After careful consideration, the court concludes that Beretta's Motion (Doc. # 20) is due to be granted in part and denied in part.

## I.     Background

This is a products liability action involving the design and manufacture of certain Beretta firearms. Plaintiff Glenn Kornegay ("Kornegay"), individually and as representative of a putative class, has filed suit against Defendant Beretta U.S.A. ("Beretta"), alleging that he has suffered harm due to a firearm defect. (Doc. # 16).

Beretta manufactures and distributes firearms in the United States, some of which contain rubber molded inserts. (Doc. # 16 ¶ 11, 15). As part of its marketing strategy, Beretta advertises that its firearms are "designed for this generation . . . and the next." (Doc. # 16 ¶ 13). Kornegay alleges that the firearms with rubber molded inserts, including his 12-gauge Beretta shotgun, fall short of Beretta's representation. (*Id.* ¶¶ 15, 20). According to Kornegay, the rubber molded inserts of the fore-ends and stocks of certain Beretta firearms degrade after a few years of normal and expected use such that the affected areas become "sticky to the touch" and "leave residue." (*Id.* ¶

23-25). Kornegay alleges that this degradation (which sometimes is colloquially referred to as the "Beretta sticky stock") affects the grip and the ability to use Beretta firearms for their intended purposes. (*Id.* ¶¶ 3, 24). The "sticky stock" issue can be resolved if owners replace the fore-ends and stocks (albeit at their own expense). (*Id.* ¶ 22, 28).

Kornegay further alleges that the rubber degradation causes certain firearms to be "sticky and chipping." (Doc. # 16 ¶ 31). Kornegay alleges that the affected area leaves a residue that damages the firearms "as well as the clothing and other personal property of the Class members." (*Id.* ¶ 25). Kornegay has clarified that the "personal property" includes clothing, carpets, gun safes, and carpeted trunks. (Docs. # 27 at 2). Moreover, because the affected area has become "uncomfortable to hold," he claims his "natural mounting technique and aim" have been altered, essentially destroying the economic value of his gun. (*Id.* ¶ 33).

Beretta now moves the court to dismiss all claims against it or, in the alternative, require Kornegay to replead his amended complaint. (Doc. # 20).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.    Analysis

Kornegay has asserted four claims against Beretta: (1) negligence and/or wantonness; (2) violation of the Alabama Deceptive Trade Practices Act ("ADTPA"); (3) unjust enrichment; and (4) "Declaratory Relief 28 U.S.C. § 2201" (which includes a request for injunctive relief). (Doc. # 16). Beretta, on the other hand, argues that none of these claims are legally viable as pled. (Doc. #

3

10 at 1). The court addresses each claim in turn.

### A.      Negligence and Wantonness Claims

Kornegay has alleged that Beretta negligently and/or wantonly manufactured and sold firearms that failed to conform to their intended and advertised purposes. (Doc. #16 ¶ 41-49). Beretta challenges these claims on a number of grounds.

First, Beretta argues that the economic loss rule precludes these claims to the extent that Kornegay seeks relief for damage to the firearm itself. (Doc. # 20 at 5). The court agrees with that position. Under Alabama's economic loss rule, a products-liability plaintiff cannot recover under theories of negligence or wantonness where "a product malfunctions or is defective and thereby causes damage only to the product itself." *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998); *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671, 672 (Ala.1989) (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295 (1986)). The rule is applicable regardless of whether the product is sold to consumer or commercial buyers. *Wellcraft Marine, a Div. of Genmar Indus., Inc. v. Zarzour*, 577 So. 2d 414, 418 (Ala. 1990) ("[Plaintiff] contends that this Court should distinguish between products that are sold to consumers and products that are sold to commercial buyers, but we are unwilling to adopt such a distinction. The rule remains the same, regardless of the nature of the customer . . . .").

Kornegay's Amended Complaint primarily alleges damage to the firearm itself. *See* Doc. # 16 ¶ 46 (alleging harm where the degraded rubber molded inserts "deposited sticky residue upon . . . the firearms themselves . . ."). Similarly, allegations that the rubber molded inserts had become "sticky and chipping" and "left residue on [his] Beretta firearm" (Doc. # 16 ¶¶ 31, 33) are precisely the types of harm precluded by the economic loss rule. *See, e.g., Harman v. Taurus Int'l Mfg., Inc.*, No. 3:21CV98-ECM, 2022 WL 479139, at *6 (M.D. Ala. Feb. 16, 2022) (holding that the

economic loss rule barred the plaintiff's tort claims where the plaintiff only alleged damage to a

pistol and no other property); *Lloyd Wood Coal*, 543 So. 2d at 674 (applying the economic loss

rule to bar tort claims for a defective front-end loader that caught fire). Accordingly, the economic

loss rule precludes Kornegay from stating a plausible claim for negligence and/or wantonness to

the extent that those claims seek relief for damage to a Beretta firearm.

On the other hand, the economic loss doctrine does not preclude Kornegay's claims to the

extent that they seek relief for damage to personal property, including damage to items such as

clothing, carpets, gun safes, and carpeted trunks. (Doc. # 27 at 2). But Beretta attacks those claims

in a separate argument. It contends that these allegations of damage are *de minimis* and fail to state

a cause of action that a district court should concern itself with. (Doc. # 25 at 6).

Both the Alabama Supreme Court and the Eleventh Circuit have recognized the maxim *de*

*minimis non curat lex* ("the law does not concern itself with trifles") and explained that it is

appropriately applied where the "discomfort and annoyance alleged . . . is so lacking in substance

that the law will refuse to recognize it . . ." Black's Law Dictionary 544 (11th ed. 2019); *Jones v.*

*Newton*, 454 So. 2d 1345, 1348 (Ala. 1984). *See also Ex parte Grand Manor, Inc.*, 778 So. 2d 173,

188 (Ala. 2000) (Lyons, J., dissenting) (noting that application of the maxim is appropriate where

"negligently caused damage in the form of physical discomfort is so trifling that the law will not

recognize a remedy."); *City of Talladega v. Ellison*, 79 So. 2d 551, 553 (Ala. 1955) (noting that a

court may decline to interfere in cases in which only nominal damages are involved). However, as

the court explained in *Hessel v. O'Hearn*, the *de minimis* doctrine "has little or no proper

application to cases in which the monetary cost of the loss is, though tiny, readily determinable."

977 F.2d 299, 303 (7th Cir. 1992). "The law does not excuse crimes or torts merely because the

harm inflicted is small." *Id. See Kantrow v. Celebrity Cruises Inc.*, 533 F. Supp. 3d 1203, 1222

(S.D. Fla. 2021) (applying the rationale of the *Hessel* court).

This is an extremely close question. However, at this early stage, the court is not prepared to dismiss Kornegay's negligence and/or wantonness claims as they relate to the alleged damage to personal property. More information is needed. So, whether or not Kornegay's claims -- including whether he is a valid representative of the putative class -- prevail following completion of discovery is a question reserved for another day.

### B.     ADTPA Claim

Beretta argues that Kornegay's ADTPA claim should be dismissed for failure to comply with (and plead compliance with) the ADTPA's pre-suit demand requirement. (Doc. # 20 at 7). Under the ADTPA, a plaintiff must communicate a written demand to proposed respondent at least 15 days prior to the filing of any action. Ala. Code § 8-19-10(e); *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015) (a pre-suit demand is "a condition precedent to filing a suit under the ADTPA."). Subsection (e) also provides the following exceptions to its demand provision: "The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state . . . ." § 8-19-10(e). The plaintiff bears the burden of showing that a defendant falls within one of the two exceptions such that no demand is required. *Sheehan v. Bowden*, 572 So. 2d 1211, 1213 (Ala. 1990).

Here, Kornegay has met his burden of showing that he was not required to make pre-suit demand because he has presented evidence sufficient to show that Beretta does not maintain a place of business in Alabama. (Doc. # 22 at 5). Specifically, Kornegay points out that the Alabama Secretary of State has no record of "Beretta" being an Alabama business entity. (Doc. # 22 at 5 n.2). To the extent that Beretta faults Kornegay for not alleging facts explaining why he was not

required to make a pre-suit demand (Doc. # 23 at 4-5), Beretta has not provided any authority indicating that such a showing is required (nor that dismissal is warranted in this circumstance). Thus, Kornegay's lack of pre-suit demand does not warrant dismissal of his ADTPA claim.[1]

Beretta next argues that Kornegay's ADTPA should be dismissed for failure to comply with Rule 9(b)'s particularity requirement. (Doc. # 23 at 7). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Kornegay's Amended Complaint alleges facts sufficient to satisfy Rule 9(b). First, Kornegay has pointed to the information he alleges that Beretta failed to disclose to consumers. *See e.g.,* Doc. # 16 ¶ 55 ("Defendant's deceptive acts and practices include . . . [o]mitting any information that the rubber molded inserts used in its firearms would degrade under conditions of normal and expected use.").

Second, Kornegay alleges that Beretta was responsible for providing information about defective rubber molded inserts at the time of purchase, yet failed to do so. (*Id.* ¶ 58 ("Defendant failed to include this information in its marketing materials and, instead, continued to tout the durability, reliability, and longevity of its products.")); ¶ 60 (alleging that consumers "would not have purchased Defendant's firearms with rubber molded inserts on the same terms if the true facts

---

[1] The court notes that Beretta only provided the portion of the statute that served its interests to the exclusion of relevant portions of the statute. (Doc. # 20 at 7). This is not a form of "advocacy" that the court endorses.

concerning the defective nature of the rubber molded inserts had been known . . ."); ¶ 7 ("[A]t no time or occasion has Beretta warned or instructed its purchasers that the rubber molded inserts degrade or that exposure to the reasonably foreseeable conditions of usage and maintenance would render its rubber molded inserts unfit for their intended purposes.").

Third, Kornegay's ADPTA allegations make clear that his claim is premised on the lack of information provided – that is, the lack of "facts concerning the defective nature of the rubber molded inserts." (Doc. # 16 at ¶ 60). Kornegay alleges that consumers were improperly led to believe that their Beretta firearms were "designed for this generation . . . and the next." (*Id.* ¶¶ 13, 55(b)).

Finally, Kornegay has clearly alleged that, as a consequence of the fraudulent omissions, Beretta obtained sales -- including some at "premium price" -- that it would not otherwise have obtained. (*Id*. at ¶¶ 14, 57, 59, 60). Kornegay has sufficiently stated an ADTPA claim.

### C.    Unjust Enrichment Claim

To prevail on an unjust enrichment claim in Alabama, a plaintiff must show that "the defendant holds money which, in equity and good conscience, belongs to the plaintiff." *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) (internal quotation marks and emphasis omitted). More specifically, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C*., 77 So. 3d 139, 145 (Ala. 2011) (quotation omitted). Retention of a benefit is unjust if:

> "(1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched."

*Fed. Home Loan Mortg. Corp. v. Anchrum*, 2015 WL 2452775, at \*5 (N.D. Ala. May 22, 2015) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004)).

Here, Kornegay has pleaded a plausible claim for unjust enrichment. Kornegay alleges that Beretta retained a benefit in the form of revenue as a result of Beretta's failure to disclose defects related to the rubber molded inserts on the firearms. (Doc. # 16 ¶¶ 64-65). At this point, Kornegay can certainly plead that if he and others had known of the defects, they would not have paid what he contends was a premium price for the firearms. (*Id.* ¶ 65). Kornegay further explains why Beretta's concealment was unlawful -- Beretta's firearms with rubber molded inserts "were defective in design, [] not fit for its ordinary and intended use, and performed in accordance with neither the advertisements, and/or marketing materials disseminated by Beretta nor the reasonable expectations of ordinary consumers . . ." (*Id.* ¶ 64).

Beretta argues that the existence of an express contract -- a Limited Warranty found on Beretta's website -- precludes Kornegay's unjust enrichment claim. (Doc. # 20 at 10-11). While Beretta correctly notes that the existence of an express contract can extinguish an unjust enrichment claim altogether (Doc. # 20 at 11 (citing *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016)), at this stage in the litigation, Kornegay has not alleged the existence of a contract between himself and Beretta nor has he asserted a claim for breach of contract.[2] Moreover, Beretta has not proffered evidence sufficient for the court to find that the Limited Warranty it points to governed any transaction between the parties. Again, these tides may change following discovery. But for now, Kornegay has sufficiently stated an unjust enrichment claim.

---

[2] In the "Introduction" to the Amended Complaint, Kornegay states that Beretta's "breach of its contractual duties" caused Kornegay and other Class members to suffer harm. (Doc. # 16 ¶ 4). There is no other mention of a contract or duties arising from a contract in the Amended Complaint.

### D.    Declaratory Action

Beretta next argues that Kornegay's "claim" seeking declaratory judgments and injunctive

relief is due to be dismissed. (Doc. # 20 at 12). The court agrees.

Declaratory judgments and injunctions are not causes of action but, rather, are remedies

tied to some other cause of action. *Est. of Tolliver v. Regions Bank*, No. 2:19-CV-00497-RDP,

2019 WL 2435871, at *7 (N.D. Ala. June 11, 2019)). As the court explained in *Tolliver*, the

Declaratory Judgment Act "does not supply an independent cause of action which may be asserted

without mentioning the source of the law that creates the rights and legal relations the party wants

the court to declare." *Tolliver*, No. 2:19-CV-00497-RDP, 2019 WL 2435871, at *7.

Here, as in *Tolliver*, Kornegay's claim for declaratory relief does not invoke any

substantive provision of state or federal law under which he asks the court to declare the parties'

rights. Rather, Kornegay seeks a ruling that:

> a. Defendant's synthetic stock and fore-end rubber molded
> inserts degrades after several years of ordinary and intended
> use of Defendant's firearms;
>
> b. Defendant will cease the sale or distribution of firearms or
> other products assembled with similar rubber molded inserts
> until such time as said defect has been corrected; and
>
> c. Defendant will recall and/or repair all such firearms
> containing the rubber molded inserts which they have sold or
> distributed since 1999.

(Doc. # 16 ¶ 69). But this does not state an independent claim. Similarly, Kornegay's request for

an injunction is not properly pled as a separate cause of action. *See Alabama v. U.S. Army Corps*

*of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005)) (internal citations omitted); *Sirmon v.*

*Wyndham Vacation Resorts, Inc.*, No. 7:10-cv2717, 2012 WL 13020303, at *5 (N.D. Ala. Apr. 17,

2012) ("Injunctive relief is just that . . . a form of relief, not a basis on which to grant it.").

**IV.     Conclusion**

For the reasons explained above, Beretta's Motion (Doc. # 20) is due to be granted in part and denied in part. A separate order in accordance with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this July 12, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE